**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO (BOULDER)**

Civil Action No. ___________________

THEA ZABNICKI, on behalf of herself and all others similarly situated,

*Plaintiff*,

v.

CHAMPION PETFOODS USA, INC.

*Defendant*.

---

# CLASS ACTION COMPLAINT AND JURY DEMAND

---

Blake Hunter Yagman
**YAGMAN PLLC**
626 RexCorp Plaza
Uniondale, New York 11556
*blake.yagman@yagmanpllc.com*

*Attorneys for Plaintiff Thea Zabnicki and the Proposed Class*

Plaintiff THEA ZABNICKI ("Plaintiff"), on behalf of herself and all others similarly situated, alleges the following class action complaint (the "Action") against Defendant CHAMPION PETFOODS USA, INC. (collectively, "Defendant") for violations of state statutes and common law doctrines seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees upon personal knowledge as to herself and her own actions, and upon information and belief, including the investigation of her counsel as follows:

## INTRODUCTION

1. Defendant is the among the largest distributors of dog food products in the United States. Defendant sells millions of dollars of dog food annually, including specialized dog food products. One such type of specialized dog food product is called "grain free" dog food. Grain free dog food products are dog food products that do not contain common grain ingredients, such as corn, soy, wheat, rice or barley. Often, these grain free dog foods contain other substances called pulses, which are nutrient deficient legumes, lentils, peas, powders, or other supplementary ingredients that attempt – and fail – to make up for the nutritional imbalance caused by the lack of nutrients which can only be found in grain-rich products.

2. During the applicable statutory period (the "Class Period"), Defendant has sold millions of dollars of grain free dog food under the "Acana" brand (the "Grain Free Products").[1] The Acana sub-brand, and, specifically, the Grain Free Products,

[1] The Grain Free Products are substantially similar and include, but are not limited to:

are expressly marketed on every package of dog food as containing "Biologically Appropriate," "Complete Food for Dogs," "Superfood For Dogs," and "Our Ingredients, Our Kitchen, Our Food, Trusted Everywhere." These representations lead reasonable consumers, like Plaintiff and Class members, to believe that the Grain Free Products provide the necessary health and nutritional benefits for dogs to regularly consume. However, these representations are false and misleading because, on the contrary, grain free dog food does not provide complete nutrition. It carries substantial risk of imbalance and cardiovascular disease, making it not beneficial nor nutritionally balanced for dogs to regularly consume.

3. For as long as consumable goods have been sold, "health-washing," which is the instigation of a sale of a consumer product by making it appear healthier than it is, has led consumers to buy products that either do not actually have any

---

Defendant's ACANA Appalachian Ranch Formula, Duck & Pear Singles Formula, Freshwater Fish Formula, Grasslands' Formula, and Lamb & Apple Singles Formula, which were all purchased by Plaintiff; as well as Jerky Bites Beef Recipe, Jerky Bites Chicken Recipe, Jerky Bites Duck Recipe, Butcher Favorites Free-Run Poultry & Liver Recipe, Butcher Favorites Farm-Raised Beef & Liver Recipe, Butcher Favorites Wild-Caught Salmon Recipe, Puppy Recipe, Free-Run Poultry Recipe, Red Meat Recipe, Light & Fit Recipe, Highest Protein-Meadowland Recipe, Highest Protein-Wild Atlantic Recipe, Highest Protein-Appalachian Ranch Recipe, Pork & Squash Singles Recipe, Beef & Pumpkin Singles Recipe, Freeze-Dried Food Farm Raised Beef Recipe Morsels, Freeze-Dried Food Free-Run Chicken Recipe Morsels, Freeze-Dried Food Free-Run Duck Recipe Morsels, Freeze-Dried Food Free-Run Turkey Recipe Morsels, Freeze-Dried Patties Farm Raised Beef Recipe, Freeze-Dried Free Run Chicken Recipe, Freeze-Dried Patties Free-Run Duck Recipe, Freeze-Dried Patties Free-Run Turkey Recipe, Premium Pate Poultry, Premium Pate Beef, Premium Pate Duck, Premium Pate Lamb, Premium Pate Puppy (in bone broth), Premium Pate Poultry (in bone broth), Premium Pate Beef (in bone broth), Premium Chunks Duck (in bone broth), Premium Chunks Lamb (in bone broth), Premium Chunks Pork (in bone broth), as well as others.

health benefits or are, in some cases, harmful. The instant case is a classic occurrence of health-washing. Here, Defendant uses false advertising and deceptive conduct which promises health-related benefits beyond a normal dog food to lure pet owners into purchases. To compound matters, the Grain Free Products are not only potentially harmful to canine health but command a price premium consistent with these misrepresentations that Plaintiff and Class members would not have paid had they known that Defendant's representations are false and misleading. The Grain Free Products also intentionally contain no warning whatsoever about potential risks and the tendency to cause nutritional deficiencies and serious health risks. In fact, as can be seen below, Defendant even muddied the waters by refuting potential risks of consumption of the Grain Free Products.

4. Against this backdrop, Plaintiff Zabnicki, on behalf of herself and all others similarly situated, brings this Action seeking actual damages, statutory damages, restitution, pre- and post-judgment interest, and reasonable costs and attorneys' fees under state statutes and common law doctrines due to Defendant's acute failure to ensure that the Grain Free Products were distributed, produced, and sold in a manner consistent with advertising.

5. As a result of the foregoing, Plaintiff Zabnicki and Class members (defined below) were harmed by paying a price premium for the Grain Free Products which they otherwise would not have paid due to the misrepresentations made about on packaging and in advertising – or would not have purchased the Grain Free Products at all.

## JURISDICTION AND VENUE

6. *Subject Matter Jurisdiction.* This Court has subject matter jurisdiction over this Action pursuant to the Class Action Fairness Act of 2005 ("CAFA") because there are (a) more than 100 members of the proposed classes, (b) some members (including Plaintiff Zabnicki) of the proposed classes have a different domicile or citizenship from the Defendant, and (c) the claims of the proposed class members exceed $5 million, exclusive of costs and fees. Specifically, there are thousands of members of the proposed classes; Plaintiff Zabnicki is domiciled in New York while Defendant is headquartered in Louisville, Colorado; and the measure of damages (a price premium paid on every package of the Grain Free Products during the Class Period) as alleged well exceeds $5 million dollars.

7. *Personal Jurisdiction.* This Court has personal jurisdiction over Defendant because: (1) Defendant is headquartered and registered to do business in Colorado, and (2) Defendant conducts significant business in Colorado such that they purposefully availed themselves of the privilege of doing business in Colorado.

8. *Venue.* Venue is proper in this Court because Defendant transacts business within this District, Defendant is domiciled in this District, and a substantial part of the events giving rise to Plaintiff's claims took place in this District – including Plaintiff's purchases.

## PARTIES

### PLAINTIFF

*Plaintiff Thea Zabnicki*

9. Plaintiff Zabnicki is domiciled in New York and resides in Delaware County, New York.

10. Plaintiff Zabnicki purchased the Grain Free Products for her dog during the Class Period from 2023 through 2025 from Chewy. According to Plaintiff Zabnicki, she bought the Grain Free Products for her dog because she relied on Defendant's representations, including that the Grain Free Products provided a balanced diet and were healthy. In fact, Plaintiff Zabnicki even changed her dog's food to this Grain Free Products solely because she thought Defendant's food was healthier than the other food her dog had been eating.

11. On the contrary, at no point did the Grain Free Products provide any warning about how the products not only were not balanced, but that they had potential negative health effects for dogs (including dilated cardiomyopathy or 'DCM', which causes subsequent heart failure). These potential negative health effects associated with grain free diets come from the presence of legume and other pea derivative ingredients and the absence of sufficient taurine in dog food. In fact, Defendant made affirmative representations to the contrary: that the Grain Free Products were actually entirely safe and did not have potential negative health effects. After consumption of the Grain Free Products, her dog developed DCM, subsequent heart failure and died in 2025.

12. Plaintiff Zabnicki relied on these misrepresentations – and had she known the truth, she would not have purchased the Grain Free Products or would have paid significantly less for the Grain Free Products.

**DEFENDANT**

*Defendant Champion Petfoods USA, Inc.*

13. Defendant Champion Petfoods USA, Inc. maintains its principal place of business located at 363 Centennial Parkway, Suite 300, Louisville, Colorado 80027. Defendant's appointed agent is C T Corporation System, located at 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601.

14. Defendant is a subsidiary of Mars Petcare, which is owned by Mars, Inc., but operates independently.

15. Defendant markets, manufactures, distributes, sells, or otherwise is responsible for the placement of the Grain Free Products at their stores both online and at retail.

**<u>FACTUAL ALLEGATIONS</u>**

***The Dog Food Business***

16. Prior to the middle of the 19th Century, the majority of domesticated dogs globally were treated as working animals – they primarily lived outside, and their diets consisted of table food, as much of pet food was made up of whatever was not consumed by their owners. However, by the late 19th Century, the Industrial Revolution created a new economic hierarchy which now included families who were solidly in the middle class. This led to a shift for canine health as well, as more families could afford to keep their pets indoors while feeding more nutritionally balanced food.

17. Commercialized pet food was first produced in England by James Spratt in the 1860's. Spratt's wheat-based "Patented Meat Fibrine Dog Cake"

became increasingly popular to coincide the surge in demand for food made specifically for dogs. By 1890, Spratt's Dog Cakes expanded into the United States and new businesses across the world began to compete with Spratt.

18. While dog food brands developed new products in the United States into the middle of the 20th Century, veterinarians found it increasingly important to create guidelines about which nutrients dogs needed to live happy and healthy lives. In the 1980's the United States National Academy of Sciences' National Research Council published their guidelines for nutritional requirement for dogs. Specifically, these guidelines focused on nutrients needed based on the dog's age and physical activity levels.

19. Because dogs consume the same food (often multiple times per day, depending on feeding schedule) and do not usually have other sources of nutrition, it is vital that the dog food chosen by a pet owner meets all necessary nutrient profiles.

***The Rise of Grain Free Dog Food***

20. Over the past two decades, pet owners' tastes for dog food have changed with the goal of helping their pets live longer by eating more sustainable sources of food. This has been paralleled through a surge of marketing around pet food products which seek to offer unique dog food offerings that have health benefits beyond traditional "kibble." However, much of these dog food offerings – despite their marketing – are not more balanced or healthy and are almost always substantially more expensive to purchase at retail.

21. One such example is “grain free” dog food.

22. The reason that “grain free” dog food initially became popular is because more pet owners are seeing reduced carbohydrate options for their pets to maintain heart health and reduced deleterious impacts of excessive weight.

23. However, the elimination of grain products (barley, corn, grain sorghum, oats, wheat, rice, and rye) results not just in a deprivation of carbohydrates but important nutrients that play a role in canine cardiovascular health such as iron, thiamine, calcium, riboflavin, folate, and niacin (which are critical nutrients for canine health and digestion). Additionally, the loss of these nutrients is compounded by the addition of lower quality components, such as a higher amount of legume seeds like peas and lentils as well as chickpeas and potatoes.

24. There have been numerous studies which show the danger and harm caused by the consumption of grain-free foods:

a. In a study, dogs which were healthy and clinically not showing signs of DCM were recently switched to a grain-free diet with a high inclusion of peas (20%) and lentils (40%), the subjects, after just 30 days, showed “progressive, significant [] decreases in red blood cell counts (RBC), hematocrit and total hemoglobin by 7.7%, 8.3%, and 6.3%, respectively, and a 41.8% increase in plasma inorganic phosphate.” The study concluded that “[c]ommonalities in these parameters were observed in clinical DCM cases” and “thus grain-free, legume-rich [] diets caused

reduced RBC and hyperphosphatemia, findings also indicated dogs with suspected DCM."[2]

b. In a study, dogs with DCM previously eating non-traditional diets (*e.g.* grain free dog food products) "had small, yet significant changes in echocardiographic parameters after diet changes." Even despite these positive changes, the median survival time for those of 611 days, with a "high risk of sudden death similar to dogs with primary DCM."[3]

c. In a study, dogs which were switched off of non-traditional diets (*e.g.* grain free dog food products" had a "[s]urvival time [which] was significantly longer" as "compared to dogs eating non-traditional diets that did not have their diets changed."[4]

---

[2] Anne Marie Bakke, Joshua Wood, Carina Salt, David Allaway, Matt Gilham, Gail Kuhlman, Tiffany Bierer, Richard Butterwick & Ciaran O'Flynn, "*Responses in randomized groups of healthy, adult Labrador retrievers fed grain-free diets with high legume inclusion for 30 days display commonalities with dogs with suspected dilated cardiomyopathy*," BMC VETERINARY RESEARCH, ARTICLE NO. 157 (2022) (APR. 28, 2022), at https://bmcvetres.biomedcentral.com/articles/10.1186/s12917-022-03264-x.

[3] Lisa Freeman, John Rush, Darcy Adin, Kelsey Weeks, Kristen Antoon, Sara Brethel, Suzanne Cunningham, Luis Dos Santos, Renee Girens, Robert Goldberg, et al., "*Prospective study of dilated cardiomyopathy in dogs eating nontraditional or traditional diets and in dogs with subclinical cardiac abnormalities*," AMERICAN COLLEGE OF VETERINARY INTERNAL MEDICINE: JOURNAL OF VETERINARY MEDICINE (MAR. 17, 2022), at https://onlinelibrary.wiley.com/doi/10.1111/jvim.16397.

[4] Kimberly J. Freid, Lisa M. Freeman, John E. Rush, Suzanne M. Cunningham, Megan S. Davis, Emily T. Karlin and Vicky K. Yang, "Retrospective study of dilated cardiomyopathy in dogs," AMERICAN COLLEGE OF VETERINARY INTERNAL MEDICINE: JOURNAL OF VETERINARY MEDICINE (DEC. 21, 2020), at https://onlinelibrary.wiley.com/doi/full/10.1111/jvim.15972.

d. In a study, dogs consuming non-traditional diets "which were typically grain-free and contained legumes" were significantly associated with and have increased relative risk for the identification of taurine deficiency and echocardiographic abnormalities consistent with nutritionally medicated DCM."[5]

25. One of the top veterinary medicine schools in the United States, Tufts University's Cummings School of Veterinary Medicine, has pushed back on the rising popularity of grain free dog food, stating:

> Whole grains, rather than being fillers, contribute valuable nutrients including vitamins, minerals, essential fatty acids and fiber diets while helping to keep the fat and calories lower than if animal products were used in their place. Even refiled grains such as white rice can have beneficial health implications depending on the type of diet and the pet. The vast majority of dogs (and cats) are very efficient at digesting and utilizing nutrients from grains. While some dogs are allergic to specific grains, these allergies are no more common than allergies to animal proteins, such as chicken, beef, and dairy, and tend to reflect the prevalence in commercial diets rather than enhanced antigenicity.
>
> It is becoming more common in the saturated pet food market for manufacturers to perpetuate myths to sell diets and increase market share. Grain free diets are an example of this strategy. Many of these diets merely substitute highly refined starches such as those from potatoes or tapioca (or cassava) in place of grains. These ingredients often provide fewer nutrients and less fiber tha[n] whole grains, while costing more.

---

[5] Eric S. Ontiveros, Bradley D. Whelchel, Joshua Yu, Joanna L. Kaplan, Ashley Sharpe, Samantha L. Fousse, Amanda E. Crofton, Andrea J. Fascetti, and Joshua A. Stern, "*Development of plasma and whole blood taurine reference ranges and identification of dietary features associated with taurine deficiency and dilated cardiomyopathy in golden retrievers: A prospective, observational study*," PLOSONE (ONLINE) (MAY 15, 2020), at https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0233206.

26. According to additional sources, such as Dr. Meaghan Corbett of Spotsylvania Animal Hospital's article "Grain Free Pet Food […] Isn't Supported By Science," the practice of pushing grain free food onto pet owners as "healthier" is counterproductive because:

a. "[W]hole grains in pet food contribute key nutrients such as vitamins, minerals, and essential fatty acids. Some grains even provide protein to the diet."

b. Contrary to popular belief, grain free pet foods are not healthier in terms of carbohydrate intake, as grain free pet foods "often contain carbohydrates from other sources including sweet potatoes, which have a higher carbohydrate level than corn."

c. "When people choose to feed grain free diets they are often spending more for a diet that may actually be causing harm to their pet's health. Recently there has been an increase in heart disease in dogs eating certain types of diets."

27. Dr. Corbett even recommends that, because of the aforementioned concerns, dogs eating a grain free diet should be promptly changed to a diet which does contain grains in food – unless it is medically necessary otherwise.

28. Generally, dogs who do need a grain free diet only require one because it is considered to be medically necessary. According to Dr. Christopher Lea, an assistant clinical professor in the Department of Clinical Sciences of the Auburn University College of Veterinary Medicine, "[s]uch [grain free] diets are most often

unnecessary. Medically speaking, it is very rare for a dog to require a grain free diet. Only in cases where an animal showed an adverse reaction to grains, which is highly unusual, would it be likely that such a diet would be prescribed."

29. Mike Jernigan of the Auburn University College of Veterinary Medicine continues based off of Dr. Christopher Lea's assessment, "[a]dding to the fact that such [grain free] diets are not often medically advisable, the FDA recently provided an updated status report in its ongoing investigation into the links between grain free pet foods and DCM, a disease that results in an enlarged heart muscle and can lead to congestive heart failure."

30. Not only are grain-free diets devoid of critical nutrients, but, according to the National Library of Medicine, recent studies have shown examples of deleterious impacts to canine health due to consumption of "grain free" products:

a. Healthy dogs of multiple breed types switched to a high pea-content diet for just 12 weeks reported adverse changes consistent with early stage-DCM;

b. Healthy dogs given a "grain free" diet resulted in taurine depletion and deprivation which was associated with low dietary protein digestion. However, this issue was reversed when the dog was switched off of "grain free" diet food.

c. Healthy dogs in a control group compared to dogs on a "grain free" wrinkled pea diet had significantly lower digestibility of starch

components – which are more heavily concentrated as the source of carbohydrates in "grain free" food.

31. As a result of the increased popularity of "grain free" diets for dogs, there have been a surge of canine DCM cases reported to the Food and Drug Administration ("FDA") in correlation to various reports by the FDA discussing the prevalence of DCM in dogs who consumed "grain free" diets:




32. With the publication of each report by the Food and Drug Administration, the amount of dog owners who became cognizant of the harms of "grain free" food increased – leading to less future instances of DCM.

**<u>DEFENDANT'S MISREPRESENTATIONS</u>**

33. Despite the unassailable truth that grain-free food lacks critical nutrients as well as the correlation of grain-free food (with high pea-content) with DCM, Defendant has sold and continue to sell the Grain Free Products with numerous misrepresentations on packaging, through digital advertising, and in descriptions of the Grain Free Products at retail.

34. The ACANA sub-brand, and, specifically, the Grain Free Products, are expressly marketed on every package of dog food as containing "Biologically Appropriate," "Complete Food for Dogs," "Superfood For Dogs," and "Our Ingredients, Our Kitchen, Our Food, Trusted Everywhere." These representations lead reasonable consumers, like Plaintiff and Class members, to believe that the Grain Free Products provide the necessary health and nutritional benefits for dogs to regularly consume. However, these representations are false and misleading because, on the contrary, grain free dog food does not provide complete nutrition. It carries substantial risk of imbalance and cardiovascular disease, making it not beneficial nor nutritionally balanced for dogs to regularly consume.

35. These misrepresentations, which were relied upon by Plaintiff Zabnicki, can be seen below on the packaging which was purchased by Plaintiff Zabnicki and, later, consumed by her dog:


ACANA
GO BEYOND THE 1ST INGREDIENT™
At a Glance
Chicken-Free
Natural
High-Protein
No Corn
No Wheat
No Soy
Gluten Free
RAW
Raw
Grain-Free
Vitamins & Minerals
Digestive Health
Skin & Coat Health
Weight Management
All Lifestages
All Breeds
25 lb


ACANA
GO BEYOND THE 1ST INGREDIENT™
RED MEAT RECIPE
MADE WITH FARM-RAISED BEEF, YORKSHIRE PORK & RAW LAMB
60% ANIMAL INGREDIENTS[1]
+
40% VEGETABLES, FRUIT & NUTRIENTS[1,2]
+
0% ARTIFICIAL PRESERVATIVES, FLAVORS OR COLORS ADDED IN OUR KITCHEN
1ST TWO INGREDIENTS HAVE FRESH OR RAW BEEF & PORK
DOG FOOD | ALL BREEDS | ALL LIFE STAGES
25 lb
OUR INCLUDED FRESH INGREDIENTS ARE DELIVERED REFRIGERATED AND OUR INCLUDED RAW INGREDIENTS ARE DELIVERED FROZEN. [1]OUR FREE-RUN CHICKEN AND TURKEYS ARE NOT HOUSED IN CAGES AND ARE ABLE TO MOVE IN A BARN WITHOUT OUTDOOR ACCESS. [2]WE ALSO ADD VITAMINS, MINERALS, NATURAL PRESERVATIVES, FLAVORS AND PROBIOTICS.


ACANA
GO BEYOND THE 1ST INGREDIENT™
NO GRAIN INGREDIENTS*
RED MEAT RECIPE
Go Beyond THE 1ST INGREDIENT™
This wholesome recipe is carefully crafted to help your dog thrive. It's made with farm-raised beef, Yorkshire pork and lamb balanced with whole fruit and nutritious vegetables, making every craveable meal feel like it came from the farmers market. It helps your dog feel so good inside – you'll see it on the outside.
THOUGHTFULLY SOURCED
NO ARTIFICIAL PRESERVATIVES, FLAVORS OR COLORS ADDED IN OUR KITCHEN
DIGESTIVE HEALTH
Fiber, plus a blend of pre- and probiotics, helps support digestive health
HEALTHY SKIN & COAT
Naturally occurring Omega-3 and Omega-6 fatty acids help support healthy skin and a shiny coat
IMMUNE HEALTH
Antioxidant-rich ingredients plus added Vitamin E help support a healthy immune system
HEALTHY WEIGHT
Protein-rich meat is balanced with fruit and vegetables to help maintain a healthy weight
MIX IT UP & add variety
ACANA™ DRY FOOD
The perfect base, rich in animal protein, in a convenient dry form
ACANA™ WET FOOD
Add a scoop on top of kibble for great taste and extra hydration
ACANA™ FREEZE-DRIED FOOD
Crumble on top to add texture, taste and the power of raw nutrition
GET MORE FEEDING TIPS AT ACANA.COM
OUR ACANA™ COMMITMENTS
WHOLE FOOD NUTRITION
Our complete and balanced recipes are crafted with ingredients you know and love, to match your pet's natural nutritional needs. We feature fresh or raw protein-rich meat, poultry, or whole fish, balanced with whole fruit and vegetables.
CARE AT EVERY STEP
Our mission is to earn pet lover trust every day so pets thrive for a lifetime. That's why we seek out healthy ingredients delivered daily by suppliers we trust, and strive to lead the way when it comes to safety and quality standards. We are proud to help pets in need, all around the world, by donating millions of meals each year.
VISIBLE VIBRANCY & HEALTH
Your pet deserves to feel so good on the inside that you'll see it on the outside. Our vets and pet nutrition experts carefully craft each recipe with the right ingredients to help support long-term health.
INGREDIENTS
Beef, pork, beef meal, whole red lentils, whole pinto beans, whole green peas, pork meal, beef fat, whole green lentils, whole chickpeas, whole yellow peas, lamb, fish oil, lentil fiber, natural pork flavor, pea starch, beef tripe, beef liver, beef kidney, pork liver, pork kidney, salt, vitamin E supplement, dried kelp, whole pumpkin, zinc proteinate, collard greens, whole apples, whole pears, mixed tocopherols (preservative), taurine, calcium pantothenate, freeze-dried beef, freeze-dried pork, freeze-dried lamb, riboflavin, folic acid, vitamin A acetate, vitamin D3 supplement, dried chicory root, turmeric, sarsaparilla root, althea root, rose hips, juniper berries, citric acid (preservative), rosemary extract, dried Lactobacillus acidophilus fermentation product, dried Bifidobacterium animalis fermentation product, dried Lactobacillus casei fermentation product.
GUARANTEED ANALYSIS
JOIN OUR ONLINE COMMUNITY
@ACANAPETFOOD
ACANA.COM
MADE BY/HECHO EN EUA POR CHAMPION PETFOODS USA INC.
12871 BOWLING GREEN ROAD, AUBURN, KENTUCKY, USA 42206 | APHIS KY-PF0-0003
CHAMPIONPETFOODS.COM
CUSTOMER CARE TOLL-FREE 1.877.939.0006

36. Each of the packages for the Grain Free Products, no matter the various combinations of protein or other carbohydrate formulations, are not only substantially similar, but are identical and appear exactly the same.

37. Critically, there are no warnings whatsoever on any of the packaging or on the websites which state that grain free dog food could lack certain critical components or that it could be harmful to canine heart health in some instances.

38. Additionally, science has shown that high pea-content products in addition to being grain free can be harmful to canine dog health as well. In this instance, the primary non-protein ingredient in the Grain Free Products are peas – which mean that the Grain Free Products contain a significant amount of peas in the absence of grains. In fact, three main non-protein ingredients (peas, lentils, and beans) have also been cited in various studies as having correlative relationships to grain free dog food and cardiovascular issues, including the onset of DCM.

**CONSUMER HARM**

39. Due to the significant number of sales of the Grain Free Products, there are likely tens of thousands of consumers who have purchased and are continuing to purchase the Grain Free Products distributed, marketed, produced, and sold by the Defendant.

40. Given that the Grain Free Products do not have the nutrients as promised on packaging and that that these products do not comport with their advertising, consumers are misled into buying the Grain Free Products, as Plaintiff was, and even pay a premium for these items. Furthermore, the deleterious health

impacts and risks of DCM for dogs is a material fact omitted on packaging which further harms reasonable consumers, including Plaintiff and Class members. Plaintiff Zabnicki also paid substantial out of pocket costs including: thousands of dollars of veterinary bills associated with the DCM caused by Defendant's Grain Free Products, as well as medication costs and emotional distress due to the loss of her beloved companion. Plaintiff Zabnicki's dog unfortunately passed away at 2.5 years old from DCM, which is an extremely young age for an otherwise healthy dog to die.

41. The veterinary opinions, related research, and study-based testing conducted and made publicly available by numerous sources has put Defendant on notice of these issues going as far back as the FDA's first recalls of grain free dog foods in 2019.

42. Furthermore, Defendant knew or should have known of the presence of the lack of adequate nutrition as well as the elevated risks of DCM through routine monitoring and testing – and yet, Defendant failed to warn consumers about these issues. Even worse, Defendant has continued to sell the Grain Free Products with misrepresentations to the contrary and attempted to refute the harms of consumption as seen above.

43. There has also been a slew of litigation regarding these types of allegations with respect to other dog food products – which should have made sophisticated producers, such as Defendant, cognizant of the risk of selling dog food into the stream of commerce which both failed to live up to representations on

packaging and in advertising as well as failing to apprise consumers that there could be risks of giving this dog food to their pets. All of this should have put Defendant on both actual and constructive notice for the need to test their Grain Free Products and to sell them with representations and warnings that consistent with this testing.

44. Pet food manufacturers, especially sophisticated ones like Defendant, hold a position of public trust. Consumers, like Plaintiff Zabnicki and Class members, reasonably believe that these Grain Free Products would not be sold if Defendant had reason to believe that the products were nutritionally deficient and even, in some instances, harmful to pet health. And yet – they continue to be sold to this very day.

45. In light of all of this, had Plaintiff Zabnicki and Class members known that the Grain Free Products were devoid of critical nutrients and that these products had an increased risk of causing DCM (and subsequent heart failure), they either would have been unwilling to purchase the Grain Free Products or would have paid significantly less for the Grain Free Products.

46. Defendant knew that Plaintiff and Class members would pay more and select "grain-free" options in order to benefit their dogs: studies have proven as much.[6] Indeed, people who disagree about whether grains should be a component of a healthy diet for dogs were 1.6 times more likely to purchase grain free dog foods than those who agreed.[7] Additionally, when consumers purchase dog food, their

---

[6] Molly Schleicher, et al., "*Determinants of pet food purchasing decisions,*" CAN. VET. J. REV. (2019), at https://pmc.ncbi.nlm.nih.gov/articles/PMC6515811/.

[7] *Id.*

most impactful and material component to their purchasing decision is the food's ingredients.[8]

47. Defendant knew or should have known that Plaintiff Zabnicki and Class members would rely on Defendant's representations to the contrary, to the packaging marketed toward pet owners to be consumed by animals who cannot fend for themselves, and to the relationship between a consumer and a food producer to adequately make consumers aware of this concerning set of facts. The Grain Free Products' labels are materially deceptive, false and misleading given Defendant's misrepresentations and omissions as stated above.

48. As such, Plaintiff Zabnicki and Class members were harmed in the form of the monies they paid for the Grain Free Products which they would not have otherwise paid had they known the truth.

---

[8] Danielle M.P. Conway, et al., "*Consumer Attitude Toward the Environmental Sustainability of Grain Free Dog Foods*," FRONT. VET. SCIENCES (2018), at https://pmc.ncbi.nlm.nih.gov/articles/PMC6166590/.

## CLASS ACTION ALLEGATIONS

49. Plaintiff Zabnicki brings this Action individually and on behalf of all other persons similarly situated pursuant to Fed. R. Civ. P. 23, seeking certification of the proposed classes (collectively, the "Class"):

> **Nationwide Class**: All persons within the United States who purchased the Grain Free Products from the beginning of any applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

50. Additionally, Plaintiff Zabnicki brings this Action on behalf of the following subclass:

> **New York State Sub-Class**: All persons within the State of New York who purchased the Grain Free Products from the beginning of any applicable statute of limitations period through the date of judgment or until the conduct alleged ceases ("Class Period").

51. Excluded from the proposed Class are Defendant and any such entities in which the Defendant has a controlling interest, the Defendant's agents, employees and legal representatives, any judge or judicial officer to whom this matter is assigned and any member of such judge or judicial officers' staff and immediately family, as well as all resellers of the Products.

52. ***Numerosity***. The members of the Class are so numerous that joinder would be inefficient and impracticable. Based upon Defendant's annual sales statistics, there are at least tens of thousands of Class members across the country.

53. ***Commonality***. There are common questions of law and fact relevant to the Class, and these questions predominate over any questions affecting

individual Class members. These common questions of law and fact include, without limitation:

i. Whether Defendant violated state and common law statutes and doctrines;

ii. Whether Defendant engaged in the conduct as alleged;

iii. Whether Defendant breached express warranties;

iv. Whether Defendant failed to warn of the risks that followed the foreseeable use of its Grain Free Products;

v. Whether Defendant was unjustly enriched;

vi. Whether Plaintiff was harmed;

vii. The measure of damages to Plaintiff and Class members; and,

viii. Whether Plaintiff is entitled to declaratory and injunctive relief.

54. ***Typicality***. Plaintiff's claims are typical of those of other Class members because Plaintiff, like every other Class member, was harmed by way of the conduct as alleged herein. Plaintiff, like all other Class members, was injured by Defendant's uniform conduct. Plaintiff is advancing the same claims and legal theories on behalf of herself and all other Class members, such that there are no defenses unique to Plaintiff. The claims of Plaintiff and those of the other Class members arise from the same operative facts and are based on the same legal theories.

55. ***Adequacy of Representation***. Plaintiff will fairly and adequately represent and protect the interests of the Class members in that she has no disabling

or disqualifying conflicts of interest that would be antagonistic to those of the other members of the Class. The damages and infringement of rights that Plaintiff suffered are typical of other Class members, and Plaintiff seeks no relief that is antagonistic or adverse to the members of the Class. Plaintiff has retained counsel experienced in consumer protection class action litigation, and Plaintiff intends to prosecute her action vigorously.

56. ***Superiority of Class Action***. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, as the pursuit of numerous individual lawsuits would not be economically feasible for individual Class members, and certification as a class action will preserve judicial resources by allowing the Class common issues to be adjudicated in a single forum, avoiding the need for duplicative hearings and discovery in individual actions that are based on an identical set of facts. In addition, without a class action, it is likely that many members of the Class will remain unaware of the claims they may possess.

57. The litigation of the claims brought herein is manageable. Defendant' uniform conduct, the consistent provisions of the relevant laws and the ascertainable identities of Class members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

58. Adequate notice can be given to Class members directly using information maintained in the parties' records.

59. ***Predominance***. The issues in this action are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein.

60. This proposed class action does not present any unique management difficulties.

**<u>FIRST CAUSE OF ACTION</u>**

**VIOLATIONS OF CONSUMER PROTECTION LAWS**

**NEW YORK'S CONSUMER PROTECTION LAW**
**N.Y. GEN. BUS. LAW § 349 ("GBL § 349")**
(ON BEHALF OF THE NEW YORK SUBCLASS)

*AND ALL SUBSTANTIALLY SIMILAR STATUTES*
(ON BEHALF OF THE NATIONWIDE CLASS)

61. Plaintiff repeats the allegations in Paragraphs 1-61 as if fully set forth with the same force herein.

62. For purposes of GBL § 349, Defendant is considered a business and Plaintiff (as well as Class members) are considered consumers.

63. GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service [. . .]"

64. Defendant committed deceptive acts or practices by employing false, misleading, and deceptive representations and/or omissions about the presence (or risk of a presence) the health and efficacy of the Grain Free Products.

65. Information as to the content in each of their Grain Free Products was in the exclusive control of Defendant. Plaintiff could not possibly have known that

the Products were devoid of critical nutrients and were not fit for consumption unless there was a medical need for them because Defendant represented that the Grain Free products were healthy for daily feeding. To compound matters, Defendant made no warning about the potential deleterious effects of these nutritious deficiencies their Grain Free Products could cause, including DCM.

66. Because Plaintiff bought these Grain Free Products numerous times, Plaintiff has standing to pursue this claim because she has suffered an economic injury due to lost money or property as a result of Defendant's acts or practices. When Plaintiff purchased the Grain Free Products, she relied on false, misleading and deceptive representations that the Grain Free Products were healthy and fit for daily canine consumption. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's Grain Free Products.

67. Defendant's conduct was deceptive in a materially misleading way because it violates consumer's reasonable expectations. Defendant knew consumers would purchase its Grain Free Products and/or pay more for them under the false – but reasonable – belief that they were healthy to regularly consume sans a medical need to do so. Defendant also made affirmative representations about the efficacy and safety of the Grain Free Products when grain free foods came under consternation following the initial FDA studies.

68. Defendant knew that this health information about its Grain Free Products, which are specifically marketed toward health-conscious pet owners,

remain material to these types of consumers. As a result of its deceptive acts and practices, Defendant sold thousands of bags of the Grain Free Products to unsuspecting consumers nationwide, as well as to thousands of unsuspecting consumers in New York – including to Plaintiff Zabnicki.

69. As a direct and proximate result of Defendant's false, misleading and deceptive representations and/or omissions, Plaintiff and Class members were injured in that they: (1) overpaid for the Grain Free Products that were not what Defendant represented, (2) were deprived of the benefit of the bargain because these Grain Free Products were different than what was advertised and marketed, and (3) were deprived of the benefit of their bargain because the Grain Free Products they purchased had less value than if Defendant had adequately disclosed the risks of consumption and the correlation to increased risks of DCM.

70. On behalf of herself and Class members, Plaintiff seeks to enjoin Defendant's unlawful acts and practices – as well as to have warnings added to the packaging of the Grain Free Products.

71. Additionally, on behalf of herself and Class members, Plaintiff also seeks to recover her actual damages or $50.00 in statutory penalties, whichever is greater, three times her actual damages, as well as reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

## VIOLATIONS OF NEW YORK'S FALSE ADVERTISING LAW N.Y. GEN. BUS. LAW § 350 ("GBL § 350")

(ON BEHALF OF THE NEW YORK SUBCLASS)

72. Plaintiff repeats the allegations in Paragraphs 1-61 as if fully set forth with the same force herein.

73. Defendant engaged in a campaign of false and misleading advertising and marketing with regard to the health of its Grain Free Products to deceive consumers into believing that the Grain Free Products were healthy for daily consumption for canines – when, in reality, the Grain Free Products were devoid of critical nutrients and could even have deleterious impacts on health in contrast to marketing which represented, warranted, and promised otherwise.

74. Because Plaintiff bought these Grain Free Products numerous times, Plaintiff has standing to pursue this claim because she has suffered an economic injury due to lost money or property as a result of Defendant's acts or practices. When Plaintiff purchased the Grain Free Products, she relied on false, misleading and deceptive representations, as well as omissions to the contrary, which led her to believe that the Grain Free Products were healthy and fit for daily canine consumption. Plaintiff spent money in the transaction that she otherwise would not have spent had she known the truth about Defendant's Grain Free Products.

75. Defendant's conduct was deceptive in a materially misleading way because it violates consumer's reasonable expectations. Defendant knew consumers would purchase its Grain Free Products and/or pay more for them under the false – but reasonable – belief that they were healthy to regularly consume.

76. Defendant knew that this health information about its Grain Free Products, which are specifically marketed toward health-conscious pet owners, are material to consumers. As a result of its false advertising, Defendant sold thousands of bags of the Grain Free Products to unsuspecting consumers nationwide.

77. As a direct and proximate result of Defendant's false, misleading and deceptive representations and/or omissions, Plaintiff and Class members were injured in that they: (1) overpaid for the Grain Free Products that were not what Defendant represented, (2) were deprived of the benefit of the bargain because these Grain Free Products were different than what was advertised and marketed, and (3) were deprived of the benefit of the bargain because the Grain Free Products they purchased had less value than if Defendant had adequately disclosed the truth about them.

78. On behalf of herself and Class members, Plaintiff seeks to enjoin Defendant's unlawful acts and practices. On behalf of herself and Class members, Plaintiff also seeks to recover her actual damages or $500.00 in statutory penalties, whichever is greater, three times her actual damages, as well as reasonable attorneys' fees.

**<u>THIRD CAUSE OF ACTION</u>**

**BREACH OF WARRANTY**

CPLR § 213(2) – BREACH OF WARRANTY SALE OF GOODS

(ON BEHALF OF THE NEW YORK SUB-CLASS)

UCC § 2-725 – BREACH OF WARRANTY
(ON BEHALF OF THE NATIONWIDE CLASS)

79. Plaintiff repeats the allegations in Paragraphs 1-61 as if fully set forth with the same force herein.

80. Defendant made affirmations of fact and promises to consumers, including Plaintiff and the Class, that the Grain Free Products were made for daily consumption for canines and which had positive health benefits consistent with that consumption. However, these affirmations of fact and promises to consumers were false and misleading.

81. The natural tendency of these affirmations of fact and promises by the Defendant were to induce consumers, such as Plaintiff and Class members to purchase Defendant's Grain Free Products at a premium price and were a basis of the bargain pursuant to which Plaintiff and Class members to purchase Defendant's products to their detriment. Defendant therefore created an express warranty that Defendant's products conformed to these affirmations and promises.

82. Defendant violated this express warranty by selling products which lacked critical nutrients and which even had a correlative tendency to cause cardiovascular issues, including DCM.

83. As a proximate result of the breach of warranties by Defendant, Plaintiff and Class members did not receive goods as warranted and did not receive the benefit of the bargain. They have been injured and have suffered damages in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**

**FAILURE TO WARN**

(ON BEHALF OF THE NEW YORK SUB-CLASS)

84. Plaintiff realleges the allegations of Paragraphs 1-61 as if fully set forth herein.

85. Under New York law, it is the responsibility of manufacturers of products (and which extend to the original or ultimate purchaser of a product) to warn of foreseeable and unreasonable risks of harm; privity need not exist. These claims depend on reasonableness and public policy concerns at the heart of the purchasing transaction.

86. In this instance, Defendant was in unique control over the facts – that their Grain Free Products have an actual tendency to increase the possibility of DCM in dogs. Despite this knowledge and their intent to have the Grain Free Products consumed by dogs (the products' intended purpose), Defendant completely fails to warn Plaintiff and Class members of this risk.

87. Plaintiff's dog was perfectly healthy until he had consumed no other food than Defendant's Grain Free Products, ultimately leading to his demise due to DCM.

88. Plaintiff seeks all available forms of damages, including injunctive relief with respect to labeling and warnings, that are available in New York under the tortious act of failure to warn.

**FIFTH CAUSE OF ACTION**

**UNJUST ENRICHMENT**

***IN THE ALTERNATIVE TO THE BREACH OF WARRANTY CLAIMS***

(ON BEHALF OF THE NATIONWIDE CLASS AND NEW YORK SUB-CLASS)

89. Plaintiff realleges the allegations of Paragraphs 1-61 as if fully set forth herein.

90. Defendant received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

91. Defendant received benefits from Plaintiff and Class members in the form of the Plaintiff and Class members' compensation Plaintiff provided for the Grain Free Products.

92. These purchases provided the Defendant with economic, intangible, and other benefits, including money.

93. Had Plaintiff and Class members known of Defendant's misconduct, they would not have paid for the Grain Free Products or would have paid less for the services on those applications or websites.

94. Defendant unjustly retained these benefits at the expense of Plaintiff and Class members because Defendant's conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and Class members.

95. The benefits that Defendant derived from Plaintiff and Class members rightly belong to Plaintiff and Class members. It would be inequitable for Defendant to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Action.

96. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendant received, and such other relief as the Court may deem just and proper.

## **REQUEST FOR RELIEF**

97. Plaintiff, on her own behalf and on behalf of the Class and the Sub-Class, requests the following relief:

a. An order certifying the Class and the Sub-Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class and Sub-Class Representative and their attorneys as Class Counsel;

b. A declaration that Defendant are financially responsible for notifying Class and Sub-Class members of the pendency of this suit;

c. An order declaring that Defendant's conduct violates the consumer protection statutes cited;

d. Actual damages;

e. Statutory damages;

f. An order providing appropriate equitable relief in the form of an injunction against Defendant's unlawful and deceptive acts and practices, and requiring proper, complete, and accurate representation and labeling of the Grain Free Products;

g. Pre- and post- judgment interest on all amounts awarded;

h. Other injunctive relief as the Court may deem appropriate; and

i. An order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

**JURY TRIAL DEMAND**

98. Plaintiff hereby demands a trial by jury.

DATED: June 18, 2026

**YAGMAN PLLC**

/s/ *Blake Hunter Yagman*
Blake Hunter Yagman
RXR PLAZA
626 RexCorp Plaza
Uniondale, New York 11556
*blake.yagman@yagmanpllc.com*
Tel: (929) 709-1493

*Attorney for Plaintiff Thea Zabnicki and the Proposed Classes*